IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

THOMAS MOYLER, JR.,        )
                                        )
        Plaintiff,          )
                                        )       Civil Action No. 7:20-cv-00028
v.                                 )
                                        )
J. FANNIN, et al.,           )
                                        )
        Defendants.     )

## MEMORANDUM OPINION

Plaintiff Thomas Moyler, Jr., a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that four employees at Red Onion State Prison ("Red Onion") violated his right to due process by failing to provide notice that photographs sent to him by email had been disapproved for receipt. A bench trial was completed on July 14, 2022. During the bench trial, the court granted Defendants' motion for judgment as a matter of law as to Defendants Tate and Bentley, leaving Defendants J. Fannin and F. Stanley as the only remaining defendants. Following the bench trial, the parties were given the opportunity to file briefs addressing the merits of Moyler's claims. Those briefs have been submitted, and the matter is ripe for disposition. Having considered all of the evidence together with the applicable law, I issue this memorandum opinion, which sets forth my findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

## I.      Testimony and Evidence

During the bench trial, the parties presented testimony and documentary evidence. The witnesses included Moyler and his mother Belinda Ballard, Fannin, Stanley, and Adrian Thomas,

an employee of JPay, Inc., a private company that partners with the Virginia Department of Corrections ("VDOC") to provide email services to inmates.

### A.      Applicable Policy Provisions

Inmates at Red Onion and other VDOC facilities may correspond with family members and friends by regular mail and by email. Incoming mail, including photographs, must comply with the procedure and guidelines for offender correspondence outlined in VDOC Operating Procedure ("OP") 803.1(VI)(C), eff. Oct. 1, 2017, which lists certain prohibited items in mail, including "[p]hotographs that violate [OP 803.1]." OP 803.1(IV)(C)(9). Such photographs include "[n]ude or semi-nude personal photographs or personal pictures . . . of any person," and "[p]ictures and photographs whether personal or commercially distributed, and other materials with gang related content." Id. Semi-nude photographs include images of "persons in diapers, underwear, lingerie or swimwear." Id.

OP 803.1 also contains provisions specifically applicable to email, which the operating procedure refers to as "secure messaging." OP 803.1(VIII). The policy states that "[s]ecure messaging is provided for personal communications for individual offenders to maintain relationships in the community, only," and that secure messaging may not be used for "business purposes." OP 803.1(VIII)(A)(1). Accordingly, "[a]ll pictures and photographs sent to offenders through secure messaging [are] treated as personal and must comply with the requirements [applicable to] personal pictures and photographs to include prohibition of nude or semi-nude personal photographs or pictures of any person." OP 803.1(VIII)(A)(3).

Messages and photographs sent to inmates by email are screened by VDOC staff members at each facility. "Messages and attachments that do not comply with the content requirements of

[OP 803.1] will be returned to the sender." VDOC 803.1(VIII)(C)(6). OP 803.1 sets forth the

following procedures applicable to noncompliant messages and attachments:

> a. Notification that the message and/or attachments were censored and returned to the sender as well as the reason for the return will be provided electronically to the offender on their media device.
>
> b. Offenders may appeal the return of their secure messages by submitting an Informal Complaint 866_F3 through the Offender Grievance Procedure in accordance with Operating Procedure 866.1, Offender Grievance Procedure.
>
> c. The Informal Complaint must include the date of rejection as indicated on the media device.
>
> d. Facility staff with access to the secure messaging system and who are designated to screen and when appropriate, reject incoming secure message and attachments must respond to the Informal Complaint and provide the offender with specific identifying information to include the letter ID, date of rejection, and customer ID.
>
> e. Offenders who choose to appeal the return of their secure message and/or attachment must submit a Regular Grievance 866_F1 and provide the identifying information for investigation by the facility Institutional Ombudsman/Grievance Coordinator.
>
> f. The facility Institutional Ombudsman/Grievance Coordinator upon receipt of a Regular Grievance will consult with facility staff in order to review the contents of the secure message and prepare an appropriate response.

Id. (italics omitted).

## B.    The Disapproved Photographs Presented at Trial

Copies of approximately 65 distinct photographs were admitted at trial as Defense Exhibit

1, and Moyler was allowed to use the photographs during trial. See ECF No. 77-3.[1] The

photographs were emailed to Moyler through the JPay system on the following dates: February 4,

2019; March 18, 2019; March 25, 2019; April 2, 2019; April 4, 2019; April 15, 2019; April 24,

---

[1] The 97-page exhibit includes duplicate copies of some of the same photographs.

2019; April 27, 2019; May 1, 2019; May 8, 2019; May 15, 2019; May 16, 2019; and May 29, 2019. Each photograph was sent from a JPay account registered to Belinda Ballard, Moyler's mother. Id. It is undisputed that all of the emailed photographs were disapproved during the screening process and that Moyler did not receive any of them. The majority of the photographs depict scantily clad women, including women in undergarments or other clothing that reveal their breasts or buttocks. A few of the photographs depict a male individual holding up three fingers on each hand.

### C.   May 2022 Testimony Regarding the Disapproved Photographs

#### 1.   Moyler

The trial began in May 2022 and continued over several separate days. Moyler testified on the first day of trial that he had used a JPay device to communicate by email since 2015. He explained that he can receive photographs by email as attachments or as separate "Snap-N-Send photos," like those in Defense Exhibit 1. May 10, 2022 Trial Tr., ECF No. 93, at 37–38.

Moyler claimed that prison staff disapproved of or blocked receipt of "hundreds" of emails addressed to him, but that only "sometimes" he received notices indicating that emails sent to him were disallowed. Id. at 22, 26. However, prison staff did not always provide notice of blocked emails, and he only knew that he did not receive all of the JPay messages and photographs sent to him by talking to family members.

Moyler spoke with Defendant Fannin about emails and photographs withheld from him and asked why certain photographs or emails had been rejected. Fannin, Moyler said, seemed to have an explanation for the decisions. See id. at 27 ("I would ask him, like, 'Why you take my pictures for?', or, 'Why did you take this email?' And he might explain it, like, 'Oh you couldn't have this one because of that,' or 'You can't do this because of that.'").

Moyler also described his efforts to utilize the VDOC's administrative remedy process to complain about not receiving notice of rejected photographs sent through JPay. For instance, on May 9, 2019, Moyler filed an informal complaint indicating that he did not receive notifications when Snap-N-Send photographs were disapproved. See Defense Ex. 3, ECF No. 77-2, at 4 ("My family sends me a number of Snap-N-Send emails which if denied I am to receive a notification for each individual Snap-N-Send. They are never to be sent back in groups. This is not about photos whatsoever, it's simply that we do not receive notification as to why our emails were censored or who sent the censored mail."). Defendant Stanley responded to the informal complaint on May 16, 2019 that "[u]se of the secure messaging system for business purposes is prohibited" and that commercial photos are not allowed. Id.

On May 20, 2019, Moyler filed a regular grievance that Stanley incorrectly responded to his informal complaint that he did not receive notification when Snap-N-Send emails were censored or confiscated. Defense Ex. 4, ECF No. 77-2, at 5. Moyler emphasized that he wanted to receive "a notification for each and every Snap-N-Send censored every time." Id. Warden J. Kiser deemed the grievance unfounded, asserting as follows: "A. Kilgore, Postal Assistant, reviewed your complaint; she reported that notification that the message and/or attachment [was] censored and returned to the sender as well as the reason for return would be provided electronically on [the] media device. Electronic notices are sent to your device through JPay, [and] there is no indication that procedures were violated." Defense Ex. 5, ECF No. 77-2, at 6.

On June 15, 2019, Moyler appealed the Level I grievance response. He emphasized that prison officials would be able to confirm that he had "not been notified" if they actually reviewed "all censored/confiscated Snap-N-Sends" that were sent to him during the previous two years. Id.

The regional administrator subsequently upheld the Level I grievance response, finding "no violation of policy." Defense Ex. 6, ECF No. 77-2, at 7.

### 2.    Brenda Ballard

Brenda Ballard testified that she had not received any messages notifying her that photographs emailed to Moyler had been confiscated. Ballard acknowledged, however, that her husband used her JPay account to email Moyler and that she had not sent the photographs introduced as Defense Exhibit 1.

### 3.    J. Fannin

Defendant Fannin testified that he previously worked as an investigator at Red Onion and that he was employed at the facility from 1998 until he retired in August 2019. Fannin acknowledged that he was "possibl[y]" involved in reviewing the photographs that were emailed to Moyler from February 2019 through May 2019, but that he did not "know for sure." May 10, 2022 Trial Tr. at 104. Fannin affirmatively denied having any conversations with Moyler regarding the photographs.

When asked about the process for screening messages and photographs sent through JPay, Fannin testified that staff members had several options, including approving the message or photograph and allowing it to be sent to the offender, censoring the message or photograph and disallowing it for offender possession, or returning the message or photograph to the sender. Fannin believed that JPay would "send[] out a notification to the customer and the offender" when a message or photograph was censored or returned to the sender. Id. at 103.

### 4.    F. Stanley

Defendant Stanley works in the mailroom at Red Onion, where her job duties include reviewing communications and other items sent by regular mail and through the JPay system. She

testified that she was "sure" that she had reviewed some of the emailed photographs admitted as Defense Exhibit 1.[2] Id. at 146. After reviewing those photographs at trial, Stanley testified that they were disallowed as nude or semi-nude images, or because they depicted individuals using gang-related hand signs. Stanley also believed that the JPay system would "automatically populate[] a notice to the inmate" when a photograph was returned to the sender. Id. at 147–48.

### D.   July 2022 Testimony and Stipulations Regarding the Disapproved Photographs

On July 14, 2022, the parties appeared via Zoom for the final day of the bench trial. Defense counsel arranged for Adrian Thomas, a JPay employee, to appear as a witness. Prior to Thomas's testimony, defense counsel advised the court that she had received from JPay a historical list of notifications associated with Moyler's JPay account and that she was unable to find notifications that matched the emailed photographs admitted as Defense Exhibit 1. Consequently, defense counsel stipulated that Moyler did not receive notifications indicating that those photographs had been returned to the sender.

Thomas is familiar with the JPay system utilized by VDOC facilities explaining that any email containing a photograph or other attachment is flagged for review, including stand-alone photographs such as those admitted as Defense Exhibit 1. A VDOC employee reviewing a photograph received through JPay has four options. First, the employee may release the photograph and allow the inmate to receive it through JPay. Second, the employee may send the photograph to security for further review. Third, the employee may reject or censor the photograph. Fourth, the employee may return the emailed photograph to the sender.

---

[2] Defendants have since asserted that Stanley was responsible for screening "all" of the photographs admitted a Defense Exhibit 1. See Defs.' Resp. Br., ECF No. 92, at 6 ("These photographs, copies of which have been admitted as Defense Exhibit 1, were all returned to the sender by an intel officer at [Red Onion]—specifically, Defendant Stanley.").

Thomas discussed the difference between returning and censoring a JPay communication and explained that upon the rejection or censoring of a communication, a drop-down menu appears that allows the reviewer to explain the reason for censoring a communication. He explained that the sending customer receives notification of why it was rejected and that the inmate receives a generic message through JPay indicating that an email had been rejected. Thomas further testified that, prior to 2020 or 2021, an inmate did not receive any notification through JPay if a VDOC employee selected to return an emailed photograph to the sender, rather than selecting the option to reject or censor the photograph. Thomas explained that the current JPay system sends a notice to the inmate through JPay any time a VDOC employee does not allow the inmate to receive a photograph or attachment sent by email. Since the photographs at issue in this action were sent prior to 2020, Thomas confirmed that Moyler would not have received any notifications through JPay when photographs were returned to the sender. Thomas also confirmed that JPay had no record of Moyler having received any notifications for the photographs admitted as Defense Exhibit 1. Following Thomas's testimony, defense counsel again emphasized that she stipulated that Moyler did not receive any notifications for those particular photographs that were sent from Ballard's JPay account.

## II.     Standard of Review

"In an action tried on the facts without a jury . . . , the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). "The findings and conclusions may be stated on the record after the close of evidence or may appear in an opinion or a memorandum of decision filed by the court." Id.

Here, the plaintiff must prove "that the truth of each element of his claim has been demonstrated by a preponderance of the evidence." Fenton v. Freedman, 748 F.2d 1358, 1361 (9th

Cir. 1984). "[A] party proves a fact by a preponderance of the evidence when he proves that the fact's existence is more likely than not." <u>Doe v. Princeton Univ.</u>, 30 F.4th 335, 347 (3d Cir. 2022) (internal quotation marks and citation omitted). In determining whether a party has met this burden in a nonjury case, the "court alone determines the credibility of the witnesses, and the weight to be attached to their testimony." <u>Fenton</u>, 748 F.2d at 1361. "While the evidentiary showing need not be overwhelming, a plaintiff may not prevail where the evidence is closely balanced or inconclusive." <u>Doe</u>, 30 F.4th at 347 (internal quotation marks and citations omitted).

### III.   Findings of Fact

Based on the testimony and evidence presented at trial, I make the following findings of fact relevant to Moyler's claim that he was denied due process as a result of not receiving notice that photographs sent to him by email were disapproved for receipt and returned to the sender.

1.     Moyler is in the custody of the VDOC. He was incarcerated at Red Onion during the time period relevant to this action.

2.     During the same period, Fannin worked as an investigator at Red Onion, and Stanley worked in the facility's mail room.

3.     Inmates at Red Onion and other VDOC facilities have access to an email system provided by JPay. VDOC officials implemented the email system in order for inmates to communicate with family members and friends and maintain relationships in the community.

4.     All incoming images, whether sent by regular mail or by email, are screened by prison staff to ensure compliance with procedures before being delivered to the intended recipient.

5.     OP 803.1 prohibits inmates at Red Onion and other VDOC facilities from receiving photographs which contain gang-related content or nude or semi-nude personal photographs of

any person. Semi-nude photographs include images of individuals in diapers, underwear, lingerie or swimsuits.

6.      All images received through the JPay email system are treated as personal images for screening purposes. As a result, inmates are not permitted to receive any type of semi-nude photograph (commercial or personal) by email.

7.      Email messages and attachments that do not comply with the content requirements of OP 803.1 may be returned to the sender. When an email message or attachment is disapproved during the screening process and returned to the sender, OP 803.1 provides that notice is to be provided to the inmate and that the inmate may appeal the decision to return the communication by filing an informal complaint, followed by a regular grievance. The informal complaint must include the date on which a particular email or attachment was rejected.

8.      From February 4, 2019, to May 29, 2019, multiple photographs were sent to Moyler from a JPay account registered to his mother, Brenda Ballard. Moyler did not receive any of the photographs included in Defense Exhibit 1.

9.      Each of those photographs was disapproved for receipt during the screening process without providing notice to Moyler.

10.      Defendant Stanley was personally involved in screening the photographs at issue.

11.      During the relevant time period, Moyler discovered through conversations with family members that he was not receiving all of the photographs that were being sent to him through the JPay system.

12.      On May 9, 2019, Moyler filed an informal complaint asserting that he was not receiving notifications when Snap-N-Send photographs were withheld from him. Stanley

responded to the informal complaint without addressing the notice issue. Consequently, Moyler filed a regular grievance complaining about the lack of notifications.

13. After Moyler filed his informal complaint, additional Snap-N-Send photographs were disapproved for receipt without providing notice to Moyler.

14. Defendants stipulate that Moyler did not receive notice that the photographs in Defendants Exhibit 1 were returned to the sender.

## IV.    Conclusions of Law

Moyler brought this suit under 42 U.S.C. § 1983, which provides a cause of action for the deprivation of federal constitutional and statutory rights under color of state law. 42 U.S.C. § 1983. Moyler claims that Fannin and Stanley violated his right to due process by failing to notify him that images sent to him by email had been disapproved for receipt and returned to the sender.

### 3.    The Merits of Moyler's Procedural Due Process Claim

The Fourteenth Amendment prohibits state officials from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. "Due process contains both substantive and procedural components." Snider Int'l Corp. v. Town of Forest Heights, 739 F.3d 140, 146 (4th Cir. 2014). Moyler raises his due process claim under the procedural component of the Due Process Clause. "To prevail on a procedural due process claim, a plaintiff must show (1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." Accident, Injury & Rehabilitation, PC v. Azar, 943 F.3d 195, 203 (4th Cir. 2019) (internal quotation marks and citation omitted).

### 3.    Moyler has a liberty interest in uncensored communication.

In Procunier v. Martinez, the Supreme Court held that "[t]he interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment." 416 U.S. 396, 417 (1974), overruled on other grounds by, Thornburgh v. Abbott, 490 U.S. 401 (1989). Consequently, "the decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards." Id.

Although Procunier involved censored letters, "the reasoning of Procunier applies to all forms of correspondence addressed to an inmate." Bonner v. Outlaw, 552 F.3d 673, 676–77 (8th Cir. 2009).

> It is the inmate's interest in "uncensored communication" that is the liberty interest protected by the due process clause, regardless of whether that communication occurs in the form of a letter, package, newspaper, magazine, etc. Thus, whenever prison officials restrict that right by rejecting the communication, they must provide minimum procedural safeguards, which include notice to an inmate that the correspondence was rejected. Although Procunier discusses letters, that is because letters were simply the form of correspondence at issue in that specific case. Nothing about the reasoning of Procunier justifies treating packages [or other forms of correspondence] differently than letters for purposes of the notice that should be given an inmate when correspondence addressed to that inmate is rejected.

Id. at 677. Accordingly, appellate courts, including the Fourth Circuit, "have applied Procunier to numerous forms of correspondence other than letters." Id. (collecting cases, including Montcalm Publ'g Corp. v. Beck, 80 F.3d 105, 109 (4th Cir. 1996), holding that due process rights applied to the rejection of subscription magazines); see also Frost v. Symington, 197 F.3d 348, 353–54 (9th Cir. 1999) (holding that an inmate had a liberty interest in receiving notice that incoming pornographic magazines were being withheld by prison authorities). Additionally, two judges in

this district have specifically applied <u>Procunier</u> to photographs sent by email. <u>See</u> <u>Coward v. Clarke</u>, No. 7:20-cv-00702, 2022 WL 971987, at *3 (W.D. Va. Mar. 20, 2022) (Urbanski, C.J.) (concluding that the plaintiff adequately stated a due process claim where he "alleged that neither prison officials nor Jpay notified him that [a] photograph attached to his incoming email had been rejected and returned to sender"); <u>Tory v. Davis</u>, No. 7:18-cv-00393, 2020 WL 2840163, at *4 (W.D. Va. June 1, 2020) (Kiser, J.) (concluding that "an inmate has a due process right to receive notice when his email communication has been censored" and that the plaintiff plausibly alleged that prison officials deprived him of due process by failing to notify him that images sent by email had been rejected).

Consistent with these decisions, I conclude that inmates have a liberty interest in uncensored communication and therefore a right to procedural due process protections when correspondence addressed to them is disapproved for receipt, including photographs sent by email. Therefore, the first element of a procedural due process claim is satisfied in this case.[3]

### 2.    Moyler was deprived of a protected interest.

The second element of a procedural due process claim requires a plaintiff to prove that he was "deprived of [a] protected interest by some form of state action." <u>Stone v. Univ. of Md. Med. Sys. Corp.</u>, 855 F.2d 167, 172 (4th Cir. 1988) (internal quotation marks and citation omitted). Since the photographs admitted as Defense Exhibit 1 were disapproved for receipt during the prison screening process, this element is also satisfied. <u>See</u> <u>Procunier</u>, 416 U.S. at 416–17

---

[3] Having concluded that Moyler has a protected liberty interest under <u>Procunier</u>, I need not address Defendants' argument that Moyler has no protected property interest in possessing the photographs at issue. <u>Vogt v. Wetzel</u>, 8 F.4th 182, 186–87 (3d Cir. 2021). Regardless of whether incoming photographs or publications contain semi-nudity or other content prohibited by OP 803.1, "the decision to censor inmate mail must be accompanied by 'minimum procedural safe-guards.'" <u>Miller v. Downey</u>, 915 F.3d 460, 466 (7th Cir. 2019) (concluding that an inmate's claim that a publication was intercepted and disposed of without notice after being deemed contraband must be considered under the standards enunciated in <u>Procunier</u>); <u>see also</u> <u>Frost</u>, 197 F.3d at 353–58 (holding that an inmate had a liberty interest in receiving notice that pornographic magazines were being withheld by prison officials even though prison officials did not violate the First Amendment by prohibiting the inmate from receiving the magazines).

(recognizing that "the decision to censor or withhold delivery of a particular letter" deprives an inmate of his liberty interest in "uncensored communication by letter"); see also Vogt v. Wetzel, 8 F.4th 182, 186 (3d Cir. 2021) (explaining that "just as a censorship policy constrains correspondence by mail, so too does a rejection policy").

### 3.     Moyler did not receive due process.

The third element of a procedural due process claim requires proof that "the procedures employed were constitutionally inadequate." Accident, Injury & Rehabilitation, PC, 943 F.3d at 203. In Procunier, the Supreme Court held that "the decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards." 416 U.S. at 417. "The Court approved a requirement that an inmate be notified of the rejection and have a reasonable opportunity to protest the decision, concluding such requirements 'do not appear to be unduly burdensome.'"[4] Bonner, 552 F.3d at 676–77. Accordingly, prison staff are "generally required" to provide inmates with notice and an opportunity to object to the confiscation or rejection of correspondence. Miller v. Downey, 915 F.3d 460, 466 (7th Cir. 2019); see also Vogt 8 F.4th at 187 (emphasizing that "when the prison rejected [the plaintiff's] letter, notification was required"); Bonner, 552 F.3d at 680 (concluding that "a reasonable official would understand that failing to give [an inmate] notice his packages were rejected violates a constitutional right"); Krug v. Lutz, 329 F.3d 692, 697–98 (9th Cir. 2003) ("[T]his circuit has repeatedly acknowledged that withholding delivery of inmate mail must be accomplished by the minimum procedural safeguards established in [Procunier].").

---

[4] The Supreme Court also approved a requirement that the author of a letter addressed to an inmate "be given a reasonable opportunity to protest" the rejection of the letter. Procunier, 416 U.S. at 418.

Here, Defendants agree that Moyler did not receive notice that the photographs in Defense Ex. 1 had been disapproved for receipt and returned to the sender. Therefore, Moyler was not afforded the minimum procedural safeguards established in <u>Procunier</u>.

Defendants nonetheless argue that "the requirements of procedural due process [were] met" because Moyler received "at least some notice that his incoming photographs had been disallowed." Defs.' Resp. Br., ECF No. 92, at 15–16. To support this argument, Defendants emphasize that Moyler learned from family members that he was not receiving photographs that someone was trying to send him through the JPay system and that he filed internal grievances challenging the lack of notification. <u>Id.</u> at 15. Defendants also note that courts have held that "where an inmate receives actual notice of mail rejection or censorship, he has been afforded the minimal due process protections outlined by the Supreme Court." <u>Id.</u> at 15–16 (quoting <u>Coe v. Zook</u>, No. 1:18-cv-00174, 2020 WL 520578, at *3 (E.D. Va. Jan. 31, 2020)).

Defendants presented no evidence that Moyler received actual notice that the photographs in Defense Exhibit 1 were disapproved for receipt. Certainly, Moyler eventually learned from family members that he did not receive all of the photographs emailed to him through JPay, but his general awareness that photographs were withheld is not sufficient to establish the notice required to satisfy due process. <u>See Procunier</u>, 416 U.S. at 417 (holding that "the decision to censor or withhold delivery of <u>a particular letter</u> must be accompanied by minimum procedural safeguards") (emphasis added); <u>Prison Legal News v. Sec'y, Fla. Dep't of Corr.</u>, 890 F.3d 954, 976 (11th Cir. 2018) (holding that notice is required "each time" an issue of a magazine is impounded during the screening process); <u>Tory</u>, 2020 WL 2840163, at *4 (denying a motion to dismiss an inmate's claim that "the defendants violated his right to due process when they failed to notify him on each occasion that his incoming email images were censored and rejected").

15

Moreover, without knowing the date that a particular JPay communication was disapproved for receipt, Moyler could not properly appeal the rejection of the communication. See OP 803.1 (VIII)(C)(6) (providing that "[t]he Informal Complaint must include the date of rejection as indicated on the media device"). As Moyler explained at trial, "[y]ou can't grieve something you don't know about." May 10, 2011 Trial Tr. at 58.

Because Moyler was not afforded the minimal procedural safeguards established in Procunier, and since there is no evidence that he received actual notice that the particular photographs at issue were disapproved for receipt, I conclude that Moyler was denied due process in violation of the Fourteenth Amendment.

### B.    Defendants' Liability

Having concluded that Moyler was denied due process, I must determine whether Fannin and Stanley are subject to liability under § 1983. Defendants construe and Moyler agrees that the amended complaint sues both defendants in their official and individuals capacities.

### 1.    Official Capacity

It is well settled that the Eleventh Amendment to the Constitution "bars suit against state officials in their official capacity for damages under 42 U.S.C. § 1983." Lawson v. Gault, 828 F.3d 239, 278 (4th Cir. 2016) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). Therefore, to the extent that Moyler seeks to recover damages from Fannin and Stanley in their official capacities, both Defendants are entitled to judgment as a matter of law on the basis of Eleventh Amendment immunity.

In Ex parte Young, 209 U.S. 123 (1908), the Supreme Court recognized an exception to Eleventh Amendment immunity that allows individuals to seek prospective equitable relief against state officials to prevent ongoing violations of federal law. Biggs v. N.C. Dep't of Pub. Safety, 953

F.3d 236, 242 (4th Cir. 2020). To fall within this exception, a plaintiff must allege an "ongoing violation of federal law" and seek relief that is "properly characterized as prospective." <u>Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.</u>, 535 U.S. 635, 645 (2002) (internal quotation marks and citation omitted).

In his amended complaint, Moyler seeks declaratory and injunctive relief, in addition to monetary damages. However, the declaratory relief requested by Moyler—a "declaration that the acts and omissions described herein <u>violated</u> Plaintiff's rights"—is barred by the Eleventh Amendment. Am. Compl., ECF No. 33, at ¶ 15 (emphasis added). "This is so because the limited exception to Eleventh Amendment immunity created by <u>Ex parte Young</u> . . . . provides <u>only</u> for prospective injunctive relief from a continuing violation of federal law, and not for declaratory relief for a past violation of federal law." <u>Int'l Coalition for Religious Freedom v. Maryland</u>, 3 F. App'x 46, 49 (4th Cir. 2001); <u>see also</u> <u>Bayer v. Neiman Marcus Grp., Inc.</u>, 861 F.3d 853, 868 (9th Cir. 2017) (noting that "a declaratory judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction").

To the extent that the amended complaint seeks prospective injunctive relief, I conclude that Moyler failed to establish that he is entitled to such relief. "'The purpose of an injunction is to prevent future violations,' and the party seeking such relief 'must satisfy the court that [prospective, injunctive] relief is needed.'" <u>Davison v. Rose</u>, 19 F.4th 626, 641 (4th Cir. 2021) (alterations in original) (quoting <u>United States v. W.T. Grant Co.</u>, 345 U.S. 629, 633 (1953)); <u>see also</u> <u>Belk v. Charlotte-Mecklenburg Bd. of Educ.</u>, 269 F.3d 305, 347 (4th Cir. 2001) ("Before a court grants a permanent injunction, the court must first find necessity—a danger of future violations."); <u>Bloodgood v. Garraghty</u>, 783 F.2d 470, 475 (4th Cir. 1986) ("An injunction is a

17

drastic remedy that will not issue unless there is an imminent threat of illegal action."). It is well settled that "an injunction may not be used for 'punishment or reparations for . . . past violations.'" Belk, 269 F.3d at 347 (quoting United States v. Oregon State Med. Soc'y, 343 US. 326, 333 (1952)).

On the final day of trial, Defendants presented evidence indicating that the issue giving rise to this litigation—failure to provide electronic notice every time an email is disapproved for receipt—has been remedied. Adrian Thomas explained that the JPay system sends an electronic notification automatically to inmates of declined emails regardless of whether the email is censored or returned to the sender. Additionally, Moyler did not present evidence of current or ongoing notification issues. Because there is insufficient evidence of a threat of future violations of Moyler's right to due process, I conclude that injunctive relief is inappropriate in this case.

### 2.    Individual Capacity

To the extent that Moyler seeks to hold Fannin and Stanley liable in their individual capacities, Defendants assert two arguments. First, Defendants argue that Moyer failed to prove that Fannin was personally involved in the deprivation of his right to due process. See Defs.' Resp. Br. at 16 n.16 (asserting that Fannin "played no role in the decision to disallow any of these photographs"). Defendants also assert the defense of qualified immunity.

### a.    Personal involvement on the part of Fannin

A plaintiff must establish a particular defendant's personal involvement in the claimed constitutional violation to hold that defendant liable in his individual capacity. Langford v. Joyner, ___ F.4th ___, 2023 WL 2335957, at *2 (4th Cir. Mar. 2, 2023); Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018). In other words, the defendant's "own individual actions" must have "violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). An official cannot be

18

held personally responsible for a due process violation unless the official "caused [the plaintiff] to be denied due process" or "contributed" to the denial of due process. Garraghty v. Va. Dep't of Corr., 52 F.3d 274, 1280–81 (4th Cir. 1995).

Having considered all of the evidence presented at trial, I conclude that Moyler failed to prove that Fannin caused or contributed to the denial of his right to due process. Although Moyler testified to having conversations with Fannin regarding photographs that had been taken or withheld from him, Moyler's testimony is insufficient to establish that Fannin played a role in disallowing the particular photographs sent by email for which Moyler received no notifications. The same is true for Fannin's testimony that he was "possibl[y]" involved in reviewing photographs emailed to Moyler from February 2019 through May 2019. May 10, 2022 Trial Tr. at 104. The mere possibility that Fannin was involved in reviewing photographs sent to Moyler is insufficient to establish that Fannin denied Moyler due process by not providing notice of rejected or returned photographs. See, e.g., Sakaria v. Trans World Airlines, 8 F.3d 164, 172 (4th Cir. 1993) ("In a long line of decisions in this circuit, we have emphasized that proof of causation must be such as to suggest 'probability' rather than mere 'possibility,' precisely to guard against raw speculation by the fact-finder."). Accordingly, to the extent Moyler seeks to hold Fannin liable in his individual capacity for the denial of due process, the court concludes that Fannin is entitled to judgment as a matter of law.

### b.    Qualified immunity

It is clear from the evidence that Defendant Stanley caused or contributed to the denial of due process. At trial, Stanley testified that she was certain that she had reviewed photographs admitted as part of Defense Exhibit 1, and Defendants' post-trial brief indicates that Stanley was responsible for disapproving those photographs during the screening process and returning them

19

to the sender. Moreover, it is undisputed that each of those photographs was disapproved for receipt without providing notice to Moyler. Because the evidence establishes that Stanley was personally involved in the denial of due process, I must determine whether she is entitled to qualified immunity.

Qualified immunity "protects government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." Danser v. Stansberry, 772 F.3d 340, 345 (4th Cir. 2014). When a plaintiff establishes a constitutional violation, "a court must determine whether the right at issue was 'clearly established' at the time of the events in question." Id. (citations omitted). The burden of proving that the right at issue was not clearly established rests with the defendant. See Stanton v. Elliott, 25 F.4th 227, 233 (4th Cir. 2022) (citing Henry v. Purnell, 501 F.3d 374, 377–78 (4th Cir. 2022)); see also Wingate v. Fulford, 987 F.3d 299, 311 (4th Cir. 2021) ("The burden of establishing a qualified immunity defense rests on the official asserting the defense.").

To determine if the right was clearly established, courts "first look to cases from the Supreme Court, [the Fourth Circuit], or the highest court of the state in which the action arose." Thompson v. Commonwealth, 878 F.3d 89, 98 (4th Cir. 2017). "In the absence of 'directly on-point, binding authority,' courts may also consider whether 'the right was clearly established based on general constitutional principles or a consensus of persuasive authority.'" Id. (quoting Booker v. S.C. Dep't of Corr., 855 F.3d 533, 543 (4th Cir. 2017)). "The unlawfulness of the official's conduct must be 'apparent' in 'light of pre-existing law.'" Booker, 855 F.3d at 538 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (4th Cir. 2017)). "However, a 'general constitutional rule . . . may apply with obvious clarity . . . even though the very act in question has not previously been held unlawful.'" Thompson, 878 F.3d at 98 (quoting Hope v. Pelzer, 536 U.S. 730, 741

(2002)). "Accordingly, public officials can still be on notice that their conduct violates established law even in novel factual circumstances, so long as the law provided fair warning that their conduct was wrongful." Dean v. McKinney, 976 F.3d 407, 418 (4th Cir. 2020) (internal quotation marks and citations omitted).

I conclude that clearly established law gave prison officials fair warning that failing to notify an inmate that correspondence was being withheld from delivery was unconstitutional. Nearly fifty years ago, "the Supreme Court in Procunier declared that inmates have a due process right to notice whenever correspondence addressed to them is rejected." Bonner, 552 F.3d at 679 (citing Procunier, 416 U.S. at 417). Although Procunier specifically involved letters withheld by prison employees, "[t]he reasoning of Procunier clearly applies to all forms of correspondence," and "subsequent case law gave fair warning that Procunier applies to more than just letters." Id. (collecting cases, including the Fourth Circuit's decision in Montcalm Pub'g Corp., 80 F.3d at 109).

As was true in Bonner, Defendants do not "cite a single case holding Procunier does not apply to a specific form of correspondence addressed to an inmate." Bonner, 552 F.3d at 680. Nor do they suggest that emails are not a form of correspondence.[5] Although Defendants seek to distinguish this case on the basis that photographs sent by email are "more analogous to . . . commercial publications" than personal letters, Defs.' Resp. Br. at 14 n.13, appellate courts, including the Fourth Circuit, have extended the reasoning of Procunier to commercial publications. See Montcalm Pub'g Corp., 80 F.3d at 107 –110 (applying Procunier to the rejection of a monthly

---

[5] Such argument would conflict with OP 803.1 (Offender Correspondence), which includes an entire section on secure messaging or email. See OP 803.1(VIII); see also Correspondence, Merriam-Webster Online, https://www.merriam-webster.com/dictionary/correspondence (last visited Mar. 6, 2023) (defining "correspondence" as "communication by letters or email"). Consistent with Procunier, OP 803.1 provides that offenders will be notified electronically when an email and/or attachment is censored and returned to the sender, and that the offender may appeal the decision. See OP 803.1(VIII)(C)(6).

magazine that included "photographic layouts of nude women"); see also Frost, 197 F.3d at 353–54 (holding that an inmate's due process claim was supported by unrebutted evidence that he did not receive certain issues of pornographic magazines and that he was not notified that the magazines were being withheld). Thus, Stanley had fair warning that Procunier applies to all forms of correspondence, including the emailed photographs at issue in this case.

Defendants argue that Stanley is nonetheless entitled to qualified immunity because she "subjectively believed that automatic electronic notifications were being sent through the JPay system." Defs.' Resp. Br. at 17. However, Stanley's subjective beliefs are "simply irrelevant" to the qualified immunity analysis. Crawford-El v. Britton, 523 U.S. 574, 588 (1998). The Fourth Circuit "has 'consistently conducted an objective analysis of qualified immunity claims and stressed that an officer's subjective intent or beliefs play no role.'" Cybernet, LLC v. David, 954 F.3d 162, 169 (4th Cir. 2020) (quoting Brown v. Elliott, 876 F.3d 637, 644 (4th Cir. 2017)).

Although qualified immunity protects government officials from liability for "objectively reasonable" mistakes of law or fact, Gandy v. Robey, 520 F. App'x 134, 140 (4th Cir. 2013) (citing Pearson v. Callahan, 555 U.S. 223, 231 (2009)), I am unable to conclude that the repeated mistakes at issue in this case were objectively reasonable. This is not a case in which a single photograph was disallowed without providing notice to the intended recipient. Instead, during a four-month period in 2019 alone, approximately 65 separate photographs were disapproved for receipt without providing notice to Moyler. During that period, Moyler filed an informal complaint alleging that he did not receive notice whenever a Snap-N-Send photograph was withheld. Even though his informal complaint specifically challenged the lack of notice, there is no indication that Stanley or any other prison official investigated whether Moyler was, in fact, receiving the notifications required by OP 803.1 and Procunier. Stanley's response to Moyler's informal complaint did not

22

address the notification issue and instead merely informed him that commercial photographs are not allowed. Following the filing of his informal complaint on May 9, 2019, additional Snap-N-Send photographs were disapproved for receipt without notifying Moyler. And according to Adrian Thomas's testimony, the notification issue persisted through the remainder of 2019, if not 2020, for any message or attachment that was sent through the JPay system and returned to the sender.

Based on the number of emailed photographs at issue in this case and the fact that Stanley was specifically informed that Moyler was not being notified when photographs were disapproved for receipt, I conclude that Stanley is not entitled to qualified immunity for violating Moyler's right to due process under the Fourteenth Amendment.

### C.      Damages

The Supreme Court has explained that "the basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights." Carey v. Piphus, 435 U.S. 247, 254 (1978). "For this reason, no compensatory damages may be awarded in a § 1983 suit absent proof of actual injury." Farrar v. Hobby, 506 U.S. 103, 112 (1992). The Supreme Court has "also held, however, that 'the denial of procedural due process should be actionable for nominal damages without proof of actual injury.'" Id. (quoting Carey, 435 U.S. at 266. "The awarding of nominal damages for the 'absolute' right to procedural due process 'recognizes the importance to organized society that [this] right be scrupulously observed' while 'remaining true to the principle that substantial damages should be awarded only to compensate actual injury.'" Id. (alteration in original) (quoting Carey, 435 U.S. at 266). Thus, courts are "obligat[ed] . . . to award nominal damages when a plaintiff establishes the violation of his right to procedural due process but cannot prove actual injury." Id. "In order for a plaintiff who has

suffered a deprivation of procedural due process to recover more than nominal damages, he must also prove that the procedural deprivation caused some independent compensable harm." Burt v. Abel, 585 F.2d 613, 616 (4th Cir. 1978).

Moyler did not present any evidence from which I could find that he suffered any actual injury or independent compensable harm as a result of being denied procedural due process. Consequently, he is not entitled to the compensatory damages requested in his amended complaint. Instead, he is entitled to nominal damages, which are "typically one dollar." Park v. Shiflett, 250 F.3d 843, 854 (4th Cir. 2001) (citing Price v. City of Charlotte, 93 F.3d 1241, 1250 (4th Cir. 1996)); see also Corpus v. Bennett, 430 F.3d 912, 916 (8th Cir. 2005) (noting that "one dollar is recognized as an appropriate value for nominal damages"). Based on the evidence presented, I find it appropriate to award Moyler $1.00 in nominal damages. See Cummings v. Connell, 402 F.3d 936, 945–46 (9th Cir. 2005) (affirming the district court's decision to award only $1.00 in nominal damages to each person in a class action who did not receive due process); Redding v. Fairman, 717 F.2d 1105, 1119 (7th Cir. 1983) (affirming the district court's decision to award only $1.00 in nominal damages to an inmate those procedural due process rights were violated on multiple occasions).

To the extent that Moyler also seeks to recover punitive damages, I find that punitive damages are inappropriate in this case. The Supreme Court has held that punitive damages may be awarded in a civil rights action under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 52 (1983). "Punitive damages punish a defendant for outrageous, intentional, or malicious conduct, and deter similar extreme conduct in the future." Washington v. Denney, 900 F.3d 549, 564 (8th Cir. 2018) (internal

quotation marks and citation omitted). Although "a finding that an official violated a plaintiff's constitutional rights" is sufficient to establish liability under § 1983, it "does not necessitate a finding of callous indifference warranting punitive damages." <u>Thurairajah v. City of Fort Smith</u>, 3 F.4th 1017, 1026 (8th Cir. 2021) (internal quotation marks and citation omitted).

After reviewing the evidence presented at trial, I find that the conduct at issue was not "sufficiently egregious" to support an award of punitive damages. <u>Id.</u> Accordingly, I decline to award punitive damages in this case.

<h3 style="text-align:center">V.      Conclusion</h3>

For the reasons stated, I will enter judgment in favor of Moyler and against Stanley on the procedural due process claim asserted against Stanley in her individual capacity, and I will award Moyler $1.00 in nominal damages.[6] I will enter judgment in favor of Fannin and against Moyler on the procedural due process claim asserted against Fannin in his individual capacity, and I will enter judgment in favor of both Defendants on the procedural due process claim asserted against them in their official capacities. Moyler's requests for declaratory relief, injunctive relief, compensatory damages, and punitive damages will be denied.

Enter:   March 15, 2023

*/s/ Robert S. Ballou*

Robert S. Ballou
United States District Judge

---

[6] An award of nominal damages renders a plaintiff a "prevailing party" for purposes of an award of costs under Federal Rule of Civil Procedure 54(d). <u>Coleman v. Turner</u>, 838 F.2d 1004, 1005 (8th Cir. 1988); <u>see also</u> <u>Project Vote/Voting for Am., Inc. v. Dickerson</u>, 444 F. App'x 660, 662 (4th Cir. 2011) (noting that plaintiffs awarded $1.00 in nominal damages "were undoubtedly the prevailing party below"). Accordingly, Moyler may file a bill of costs with the Clerk for the filing fee and any other costs recoverable under 28 U.S.C. § 1920. <u>See, e.g.</u>, <u>Johnson v. Lopez</u>, No. 2:15-cv-00884, 2023 WL 1869072, at *2 (D. Nev. Feb. 9, 2023) (awarding costs to a prevailing prisoner in the amount of the filing fee and directing the defendants to tender the remaining balance of the filing fee to the Clerk); <u>Tatum v. Meisner</u>, No. 3:13-cv-00044, 2018 WL 300989, at *2 (W.D. Wis. Jan. 5, 2018) (same).